EMILIE LAMS, PLAINTIFF-APPELLANT, v. HARWOOD E. O. FISH, DEFENDANT-RESPONDENT.

Argued March 11, 1914—Decided June 15, 1914.

1. Moral fraud in a misrepresentation is an essential element in an action for deceit.
2. Before a plaintiff can recover in an action for deceit he must show that he has sustained damage, and where the action is predicated on the purchase of stock in a company, claimed to have been induced by fraudulent misrepresentation as to its value, there must be proof that the stock was in fact worth less than the plaintiff paid for it.
3. Where the record of the trial shows that no objections were made to the rulings of the court, those rulings will not be considered in proceedings for review.

---

On appeal from the Supreme Court.

For the appellant, *M. Casewell Heine* and *Malcolm G. Buchanan.*

For the respondent, *Codding & Oliver.*

The opinion of the court was delivered by

KALISCH, J. The fundamental question presented by this appeal is whether the plaintiff's proof tended to establish a legal cause of action for deceit against the defendant. The trial judge deemed the proof insufficient and gave a judgment of nonsuit. The gravamen of the plaintiff's complaint is that

Lams v. Fish.                    86 N. J. L.

he was induced, by false and fraudulent representations made to him, on the 27th day of February, 1909, by the defendant, to purchase fifteen thousand shares of stock of a company known as the Gem Dredging Company and for which he paid $2,250.

At the trial the plaintiff testified that his intention originally was to have bought only five thousand shares of stock for $750, on account of which he paid $450, and that he was induced to purchase the extra shares by reason of the representations subsequently made to him by the defendant.

The false representations relied on by the plaintiff as true are stated in the complaint to be—*first,* that on the 27th day of February, 1909, the defendant represented "that Gem Dredging Company had a lease from a corporation known as Brazilian Dredging Company of South Dakota, of one or more miles of diamond and gold-bearing lands on the Jequitinhonha river in Brazil," whereas the Gem Dredging Company did not at that time own such lease; *second,* that this land had been tested and proved by experts to be of great value, which also was not true, in fact.

The plaintiff's testimony on this point was that the defendant said: "There is a mine in Brazil, and the name of Jack, and the name of the company is 'Gem Dredging Company;' it was tested by experts, expert engineer and expert man, proved to be gold, diamonds and the sand will pay all expenses.

"*Q.* What else, if anything, did he say in regard to that company in that conversation on the 27th day of February?

"*A.* All he said, the company owns a lease.

"*Q.* What did he say they owned a lease on?

"*A.* On the Jack.

"*Q.* This Jequitinhonha river?

"*A.* Yes, we will call it that way. I call it Jack so everybody understands me.

"*Q.* What company did he say owned this lease?

"*A.* The Gem Dredging Company."

The plaintiff's proof established that the Gem Dredging Company was not the owner of the lease at the time the rep-

resentation to that effect was made by the defendant, but that it did acquire the ownership thereof shortly afterwards. Under *Byard* v. *Holmes,* 34 *N. J. L.* 296, this misrepresentation was immaterial. Since the Gem Dredging Company did acquire the ownership of the lease it could make no difference in the value of the plaintiff's stock whether the company owned the lease on the day stated or not.

In regard to the representation made by the defendant, that the land had been tested and proved by experts to be rich in diamond and gold values, we are unable to find any testimony disproving the truth of it. We glean from the plaintiff's proof that the defendant sent a Mr. Hedden to look over the properties and make a report as to their mining value, and that Hedden, not being an engineer, took Mr. Ross, an engineer, with him to examine into and make a test of the properties, and that as early as the 4th day of February, 1909, Hedden sent a cablegram to defendant, as follows: "Have examined the property and find it fully as represented. The values are certainly here. Go ahead with the financial end of it." The plaintiff admits that he was made aware of the contents of this message, and that he did, five days afterwards, pay a deposit of $450 on account of subscriptions to stock in the Gem Dredging Company. From this it may be safely inferred, there being no evidence to the contrary, that the plaintiff had full knowledge of the source of the defendant's knowledge of the value of the mining properties, so that when the defendant stated to the plaintiff nearly three weeks later, at the time the plaintiff paid $1,800, the balance due for one thousand five hundred shares, that the land had been tested and proved by experts to be rich in diamond and gold values, the plaintiff must have known that the defendant was making such statements upon information received from Hedden and not of his own knowledge of the facts. We think, therefore, that upon the plaintiff's own showing it appears that there was an absence of moral fraud in the misrepresentations, if such it were, which is essential to support an action for deceit. *Cowley* v. *Smyth,* 46 *N. J. L.* 380.

But a most important controlling circumstance is that there is nothing contained in the plaintiff's proof from which it can be reasonably inferred that the defendant's representation was untrue.

It is a familiar rule of law that before a plaintiff can recover in an action for deceit he must show that he has sustained damage. *Cowley* v. *Smyth, supra.* This the plaintiff failed to do. There is an utter absence of proof as to the value of the stock. Whether it is worth more or less than the plaintiff paid for it is left unrevealed.

The appellant's brief contains numerous grounds of appeal based upon the claim that the trial judge erroneously admitted and excluded testimony offered in the cause, to his prejudice. But, from the record, it appears that with the exception of two instances, the appellant made no objections to the rulings of the court. Those matters are therefore not properly before the court for review and will not be considered. *Kargam* v. *Carlo,* 85 *N. J. L.* 632; *Miller* v. *Delaware River Transportation Co., Id.* 700.

The two instances in which the appellant made objections to the rulings of the court disclose that neither of the rulings in any manner affected the fundamental propositions upon which the result in this case is reached.

The nonsuit was properly directed and judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ. 10.

*For reversal*—None.