14 N.J. Super. 254 (1951)
82 A.2d 1
GEORGE R. MURPHY, PLAINTIFF-APPELLANT,
v.
AGNES TERZAKO, AN INFANT, BY HER GUARDIAN AD LITEM, MAE TERZAKO, MAE TERZAKO, INDIVIDUALLY, AND RALPH GAMBA, JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 14, 1951.
Decided May 23, 1951.
*256 Before Judges McGEEHAN, JAYNE and Wm. J. BRENNAN, JR.
Mr. Sidney M. Schreiber argued the cause for appellant (Messrs. McKeown, Schreiber & Lancaster, attorneys).
Mr. George F. Lahey, Jr., argued the cause for respondents, Terzako (Messrs. Lahey & Gockeler, attorneys).
Mr. Frederick C. Vonhof argued the cause for respondent, Gamba (Mr. William P. Braun, attorney).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Murphy and one Hahn were passengers riding in the back seat of the Gamba car which was proceeding north on Sanford Avenue, Newark, on September 29, 1948, and which, just before it reached the intersection with Abbottsford Avenue, was struck by the Terzako car following it, resulting, as alleged, in injuries to Murphy. Murphy sued both Gamba and the Terzakos (driver and owner), met with a jury verdict in the Essex County Court of no cause for action as to all defendants, and was denied a new trial by the trial judge on a motion brought on the ground that the verdict was against the weight of the evidence. Murphy appeals.
The first point argued is that the verdict was contrary to the weight of the evidence. That point would not *257 have been considered in an appellate court under the former practice, which limited appellate review after the denial of a new trial in a lower court to an inquiry whether the lower court's action evinced a "plain abuse of discretion," Nelson v. Eastern Air Lines, Inc., 128 N.J.L. 46 (E. & A. 1942) followed in Batts v. Joseph Newman, Inc., 3 N.J. 503 (1950); and see DeFronzo v. Public Service Coordinated Transport, 116 N.J.L. 116 (E. & A. 1936). Our new rules, however, entitle the appellant to have this court consider the question anew. Rule 1:2-20(a) (see also Rules 4:2-6 and 3:59-5, as amended November 10, 1949) provides: "On a review of any cause involving issues of fact determined by the verdict of a jury, the verdict, if contrary to the weight of the evidence, shall be set aside." It is thus our duty independently to review the record and to determine whether the verdict comes within any of the condemned classifications. Taylor v. Public Service Interstate Transportation Co., 13 N.J. Super. 125 (App. Div. 1951). "Under the rule, the trial judge and the appellate tribunal are controlled by the same criterion," that is, whether "the verdict clearly gives rise to the inference of mistake, passion, prejudice or partiality." Hager v. Weber, 7 N.J. 207 (decided May 21, 1951), affirming 8 N.J. Super. 252 (App. Div. 1950). However, in applying the criterion in a case in which the trial court has denied a new trial, we do not ignore, but give due, although not controlling, regard to the trial court's action and to the trial judge's opportunity, denied us, to observe the witnesses who testified. Gelsmine v. Vignale, 11 N.J. Super. 481 (App. Div. 1951).
All the evidence bearing on the mishap was adduced on plaintiff's case. Plaintiff called to the stand Gamba, the two Terzakos, and Hahn, his fellow passenger, in addition to giving his own testimony. All witnesses agreed that it was dark and raining; the plaintiff testified it was raining "very, very hard." "pouring." The headlights of both cars were lighted. Murphy and Hahn were returning with Gamba from a golf game at Galloping Hill. Hahn lived on Abbottsford *258 Avenue and Gamba proposed to take him home first. Abbottsford Avenue runs west of and begins at Sanford Avenue, forming a T-shaped junction where the two streets meet. Plaintiff, Hahn and Gamba told substantially the same story. They said that Gamba was proceeding at a moderate rate of speed along Sanford Avenue within the northbound traffic lane and slowed down as he approached Abbottsford Avenue intending upon a favorable opportunity to cross the line of southbound traffic and make a left turn into Abbottsford Avenue; that he gave no signal of his intent to turn because he had not reached the point where that would be necessary; that when he was still 20 to 25 feet south of Abbottsford Avenue the Terzako car struck the rear of the Gamba car as it moved towards the intersection. The Terzakos' testimony was that as they followed the Gamba car some 20 to 25 feet behind it, Gamba decreased his speed and made a maneuver which led them to think that he intended to turn, not to the left, but to the right, toward the curb "as if he were going to park." The driver of the Terzako car testified, "so I started to go left," "to pass it" when the stop light on the Gamba car went on and the car "seemed to stop suddenly," "I applied my brakes when I saw the light but I was too close to avoid striking the car."
Murphy relies upon Hoffman v. Smith, 6 N.J. Misc. 1090 (Sup. Ct. 1928) and Stone v. Dewarns, 7 N.J. Misc. 871 (Sup. Ct. 1929), contending that when an accident of this kind happens one or the other or both of the drivers of the vehicles are fairly to be charged with negligence, and that the verdict in favor of both of them at the hands of the jury can "reasonably be accounted for on no other theory than that the jury was unable to make up their minds as to which of the two defendants was responsible," and compromised by finding the plaintiff entitled to recover as against neither. Both of those cases involved collisions at intersections where the testimony was such that verdicts absolving both drivers could hardly be supported on any theory of the cause. We are not persuaded that the proofs here sustain a clear inference *259 that the jury believed negligence had been proved but returned an illegal compromise verdict because of their inability to agree upon the driver at fault. Certainly the testimony of the occupants of the Gamba car is hardly persuasive that he was responsible, and in the light of that testimony the jury might reasonably have been left unconvinced by the Terzakos' somewhat different version of the manner in which Gamba operated his vehicle. And the only testimony as to the handling of the Terzako car was adduced by the plaintiff from the Terzakos themselves, and the jury could reasonably have found that that testimony absolved the driver of that car of fault.
It is axiomatic that recovery cannot be had merely upon proof of the happening of an accident. Negligence is never presumed; it, or the circumstantial basis for the inference of it, must be established by competent proof and whether it exists is preeminently a question of fact for the jury. Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951). In approaching the responsibility laid upon us by Rule 1:2-20(a), our guide, as we said in Taylor v. Public Service Interstate Transportation Company, et al., supra, is that: "The general supervisory power of the appellate tribunal which enables it to examine the propriety of jury verdicts and the consequent judgments founded upon them is essentially remedial in character. The power is not exercised with a view of supplanting the appropriate function of the jury. It continues to be preeminently the mission of the jury to resolve the credibility of the testimony of the witnesses, to settle the facts, and to determine the inferences which ought to be logically and legitimately drawn from them. A verdict founded upon logical and legitimate inferences from facts established by evidence is normally conclusive. Smith v. Lorillard Co., 67 N.J.L. 361 (Sup. Ct. 1902)." And, further, that it is only "where neither the facts nor the permissible inferences from them vindicate the verdict and it is manifest that the verdict was fabricated by the influences of sympathy, or passion, or prejudice, *260 or based upon mistake, (that) it must in the course of the administration of justice be annulled. Bowen v. Healy's, Inc., 16 N.J. Misc. R. 113, 115 (Cir. [Sup.] Ct. 1938)." And the Supreme Court, in Hager v. Weber, supra, said, "The appellate tribunal cannot invade the constitutional office of the jury; it may not merely weigh the evidence where it is fairly susceptible of divergent inferences and substitute its own judgment for that of the jury. * * * The court may not set aside a verdict merely because, in its opinion, the jury upon the evidence might well have found otherwise."
Moreover, the jury could have reached its conclusion upon a finding that Murphy had not established by a preponderance of the evidence that the condition for which he claimed damages was causally connected with the collision. The condition claimed was a "traumatic myositis, intercostal muscles," that is, an inflammation of the muscle between the seventh and eighth ribs. The doctor's diagnosis of "traumatic myositis" was based on Murphy's information that he had been in the accident. The doctor admitted, however, that the condition of myositis could also be attributed to "cold or exposure" and that Murphy had not told him what Murphy testified to at the trial, namely, that he and Gamba played golf in the rain that day, "This day it rained very hard, so we decided we would play anyhow. We played the whole day. It came down in torrents. We decided due to the fact we were supposed to have a buffet luncheon, since we were soaking wet and cold, we would go home, because Mr. Gamba had to get back to his place of business." The defendants' medical witness, while conceding that he had found evidence of myositis when he first examined Murphy in January, about four months after the collision, testified also that the condition he found could be "due to exposure." It was said in Ochs v. Public Service Railway Co., 81 N.J.L. 661 (E. & A. 1911), "* * * it is the injury and not alone the negligent act which gives rise to the right of action, for a negligent act is not in itself *261 actionable, and only becomes the basis when it results in injury to another. In order to support an action there must be not only the negligent act, but a consequential injury which is the gravamen of the charge * * *." Here the jury could have found that Murphy had not proved a consequential injury which would justify compensation. Salmon v. Tuthill, 10 N.J. Misc. 96 (Cir. Ct. 1932); and see Smith v. Red Top Taxicab Corp., 111 N.J.L. 439 (E. & A. 1933).
The second point argued is that the trial court erred in charging the jury that it could return a verdict of no cause of action as to all defendants and in refusing to correct the charge upon objection made at its close. The contention is that upon the evidence adduced the jury should have been charged that it was their duty to return a verdict in plaintiff's favor against either or both of the defendants. Murphy relies on Heinz v. Atlantic Stages, Inc., 113 N.J.L. 321 (E. & A. 1934), Mettie v. DeBaghian, 103 N.J.L. 118 (E. & A. 1926), and Brass v. Todd, 4 N.J. 132 (1950). An examination of those cases shows that each of them turned in part on an admission of negligence, which does not appear here. In any event, what we have already said makes it clear that in the facts and circumstances of this case the trial court correctly instructed the jury that it was at liberty to return the verdict which was rendered.
Affirmed.