JERRY CORCIONE, BY HIS NEXT FRIEND, JOSEPH COR-
CIONE, AND JOSEPH CORCIONE AND MARY COR-
CIONE, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v. ERNEST ZINGERMAN, DEFENDANT-APPELLANT.

Submitted February 17, 1933—Decided April 27, 1933.

For the defendant-appellant, *Henry K. Golenbock*.

For the plaintiffs-respondents, *Quinn, Parsons & Doremus*.

The opinion of the court was delivered by

WELLS, J.   This is an appeal from a judgment entered in
the New Jersey Supreme Court on a verdict rendered by a
jury in favor of the plaintiffs and against the defendant.

The case arose out of a collision of an automobile operated by defendant and a motorcycle upon which the infant plaintiff was riding.

Appellant argues two points for reversal:

1. The trial court erroneously instructed the jury.

2. The trial court erred in refusing to nonsuit the plaintiff and direct a verdict for defendant.

We shall consider the second point first.

At the conclusion of the plaintiff's case, defendant's counsel made a motion for a nonsuit on the ground that there had been no negligence shown on the part of the defendant and that the question of contributory negligence of plaintiff was a matter of law for the court to decide.

At that time there had been testimony to indicate that the plaintiff's motorcycle was being driven at a reasonable rate of speed on Stone road, Raritan township, immediately prior to the accident; that it was approaching the intersection of Stone road with Florence avenue, at approximately twelve to fifteen miles an hour; that it was properly lighted and that at the time of the crash the motorcycle of the plaintiff was further across the intersection than the car of the defendant.

There was additional evidence that immediately prior to the accident the car of the defendant was being operated on the left-hand side of the highway and was traveling at a speed of approximately sixty-five miles an hour; that as it approached the intersection it made a sharp swerve towards its right-hand side, that at this time the motorcycle of the plaintiff was almost across the road when the car of the defendant struck it, as it was about to leave the intersection.

There was evidence that the plaintiff was thrown a distance of approximately twenty feet in the direction in which the defendant was going and the car of the defendant continued after the collision to go on for about thirty or thirty-five feet and then struck a culvert and upset; that there were skid marks approximately seventy-five feet long, indicating where the brakes of the defendant's car had been applied.

Upon the refusal of the court to grant a nonsuit, the de-

fendant proceeded with his case and called two witnesses as to the collision. One of these was a state trooper who arrived one hour after the accident, and who could shed no light upon its occurrence. The other was the defendant himself. The defendant's version of the accident was that his view was obstructed until he was approximately twenty feet from the corner when he saw the motorcycle which was about sixty feet away, and that thereupon he applied his brakes, which were in good order, but the motorcycle struck his car on an angle; that he was going less than thirty miles an hour on the right-hand side of the street and that he had the right of way, &c.

At the conclusion of the case, counsel for the defendant made a motion for the direction of a verdict on the grounds advanced in his motion for a nonsuit. This motion was also denied.

We think the question of the negligence of the defendant and the contributory negligence of plaintiff were clearly questions for the jury and that the motions to nonsuit and direct a verdict were properly denied.

The other point argued by appellant is that "the trial court erred in instructing the jury that Mr. and Mrs. Corcione were entitled to the infant's earnings inasmuch as they stood *in loco parentis* to him."

That was not precisely what the court charged. The complaint alleged that Joseph and Mary Corcione were the parents of the minor plaintiff. The answer denied this allegation. The issue was, therefore, fairly raised.

The plaintiff Joseph Corcione failed to testify and the only testimony in the plaintiffs' case as to the parentage of Jerry is that of Mary Corcione. Nowhere does she positively declare that Jerry was her son.

Counsel for respondent very adroitly avoids asking her the direct question. After a few preliminary questions addressed to Mrs. Corcione, she was asked this question by her counsel: "Now, how many children have you besides Jerry?" She answered: "Six, and one niece I am taking care of."

The inference sought to be conveyed to the minds of the jury was, of course, that Jerry was one of her children.

On the other hand the defendant produced Mrs. DeGenito, her husband, Genardo DeGenito, and Herman DeGenito, their son, all of whom testified that Jerry was a brother of Mary Corcione and that Mr. and Mrs. DeGenito were his parents. This testimony was not denied by either Mary or Joseph Corcione. The jury did not have the benefit of the birth certificate and church records offered by the defendant, because they were not properly certified and could not be admitted in evidence.

The uncontradicted testimony was that Jerry lived with Mr. and Mrs. Corcione, that he usually gave Mrs. Corcione his earnings, and that the medical and hospital bills were made out to Joseph Corcione.

In this situation the court undertook to instruct the jury as to the right of Mr. and Mrs. Corcione to recover damages.

The appellant took several exceptions to the court's charge, which are the basis for the fifth, sixth, seventh and eighth grounds of appeal. These we shall deal with in the order in which they appear in the charge.

The first part of the charge to which exception was taken was preceded by the court saying to the jury: "Now, it is the law that when a boy or girl under age is injured, the parents have a right to be compensated for loss of earnings of such child under the age of twenty-one years. That is the old common law, that the parents are entitled to the services of the minor child from the time it is able to do any compensatory work until the time the child becomes, as we say, of age, namely twenty-one years." Then immediately follows the first part of the charge objected to (ground of appeal 8):

"The earnings of the child within that time belong to the parents unless they allow the boy or girl to go out on his or her own and take his or her own earnings and devote them to his or her own use. In other words, the parents may emancipate a minor child." * * *

The fifth, sixth and seventh grounds of appeal relate to the following parts of the court's charge:

"So, here you have the unique situation where you are called upon to determine who are the parents in the case,

whether they are Mr. and Mrs. Corcione, or Mr. and Mrs. DeGenito, who rather dramatically appeared in court this morning as you will remember.

"Now, evidently, when counsel drew the complaint in this case he found that this boy was living with Mr. and Mrs. Corcione. If you believe the boy's testimony, he was giving his small earnings to Mrs. Corcione upon the theory that she was his mother. Just how long he had been living in that house, I don't recall. You will remember the testimony. Apparently, it was for some time. However, the question, as I see it, is whether it has been proven under a fair preponderance of the proof, that Mr. and Mrs. Corcione have been standing in the place of the real parents of this boy, and whether they have become obligated to pay the hospital and medical bills, as well as having become entitled to his earnings." * * *

"Having determined the questions of negligence and damages, you will then consider who are the real parents of the boy. In that respect I suggest to you that you return a special verdict. Are Mr. and Mrs. Corcione the true parents of this boy? If your answer is 'yes,' then the amount of recovery on the second count, for medical expenses, doctors' care and so forth, would properly go to them."

"If you are unable to find, under a fair preponderance of the proof, that they are the parents of the boy, but, as a matter of fact, Mrs. Corcione is a sister to the boy, you will so return a verdict, and I will later direct that the pleadings at the proper time be so amended as to set out the true statement of the facts, and that matter will be left to the court to adjust, by way of amendment or otherwise, as the court may see fit in the circumstances."

After a careful examination of the court's charge and the testimony in the case, we cannot escape the conclusion, that the charge, taken as a whole, was erroneous and harmful.

The charge tended to give the jury the impression that a verdict could be rendered to Mr. and Mrs. Corcione on either of two grounds, one, that they were the parents of Jerry, and two, that, even if they were not, then they were entitled to a verdict if they stood *in loco parentis* to him.

As is admitted by counsel for respondents, nowhere in the pleadings or testimony does it appear that it was ever claimed that Mr. and Mrs. Corcione stood *in loco parentis* to Jerry, and the case is void of any claim on the part of the plaintiffs of emancipation.

In spite of this, however, this question was injected into the case by the charge of the court—in language from which it was fairly to be inferred that if the jury found that the Corciones had become obligated to pay the bills and had become entitled to the boy's earnings, they were entitled to a verdict even though not the real parents.

Our understanding of the law is that only the real parents, and not a person standing *in loco parentis* to an infant, where there are real parents, are entitled to be compensated for the loss of his earnings and for the expenses of his medical care.

In the case of *Callaghan* v. *Lake Hopatcong Ice Co.,* 69 *N. J. L.* 100, Mr. Justice Pitney, speaking for the Supreme Court, reiterated the principle propounded in *Brown* v. *Ramsey,* 29 *Id.* 117, when he said:

"The right of the father to the son's services is to be presumed from the minority of the latter unless emancipation appears."

The father has such right because he has the correlative duty of supporting the child until the latter reaches the age of twenty-one years and this duty is enforceable by statute. If the parents, as in the instant case, could be deprived of their right by persons standing *in loco parentis* to the infant, we would have the anomalous situation of the parents being liable for the support of their infant child while those *in loco parentis* would reap the benefit of his services.

We are of the opinion, therefore, that there was error in the charge of the trial court. That this error was harmful, we are also convinced.

With the meagre proofs as to the parentage of the Corciones, it may well be that the jury gave them a verdict because of the charge of the court from which it could be inferred that notwithstanding they were not the parents of Jerry, yet inasmuch as it had been proved that Mr. and Mrs. Cor-

cione had been standing in the place of his real parents, receiving his earnings and obligated to pay his bills, they were entitled to a verdict.

The portions of the court's charge to which exceptions were taken, are concerned only with the right of recovery of Mr. and Mrs. Corcione, in their individual capacity, and they in nowise effect the verdict which was rendered in favor of the plaintiff Jerry Corcione by his next friend.

We are of the opinion that the judgment in favor of the plaintiff Jerry Corcione for $3,000 should be affirmed and that the judgment in favor of the plaintiffs Joseph and Mary Corcione for $1,000 should be reversed.

*For affimance in toto*—THE CHANCELLOR, DONGES, HETFIELD, DILL, JJ. 4.

*For affirmance in part*—THE CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, HEHER, VAN BUSKIRK, KAYS, DEAR, WELLS, JJ. 11.