93 N.J. Super. 351 (1966)
225 A.2d 742
PATRICK BRENNAN, BRIAN BRENNAN, AND SEAN BRENNAN, INFANTS BY THEIR GUARDIAN AD LITEM, MONICA BRENNAN, MONICA BRENNAN, INDIVIDUALLY, AND JOHN T. BRENNAN, PLAINTIFFS,
v.
HENRY BIBER AND HENRY STOCKHAMMER, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 29, 1966.
*357 Messrs. Cohn & Lifland, attorneys for plaintiffs (Mr. David Cohn appearing).
Messrs. Jung, Selikoff & Rathman, attorneys for defendants (Mr. John G. Rathman appearing).
KOLE, J.C.C. (temporarily assigned).
On July 21, 1962 plaintiff John Brennan, operating his automobile in which his three infant children were passengers, was involved in an accident with defendant Henry Biber, who was operating an automobile owned by defendant Henry Stockhammer. As a result thereof an action was brought against defendants by (1) the three children, Patrick, Brian and Sean Brennan, suing by Monica Brennan, their mother, as guardian ad litem, for injuries allegedly sustained by them; (2) John Brennan for his injuries and automobile damage; and (3) Monica Brennan, individually, for medical, drug and hospital expenses (herein "medical expenses") relating to the children's injuries and for damages for loss of their services, society and companionship. Among the defenses asserted was John Brennan's contributory negligence.
*358 The action against Biber was submitted to the jury. It returned a no cause for action verdict against (1) the children Patrick and Brian, (2) John Brennan and (3) Monica Brennan individually. It returned a verdict of $1,100 damages in favor of the infant Sean Brennan for his injuries.[1]
Plaintiffs moved for a new trial as to all plaintiffs (except the infant Sean Brennan) on liability and damages, and as to the infant Sean as to damages only or, in the alternative, for an additur to the verdict for Sean.
The motion for new trial as to all plaintiffs is hereby denied for the following reasons:
1. Plaintiff John Brennan's claim for his injuries and car damage.
John Brennan was the operator of the car involved in the accident with defendant. The court instructed the jury that he could not recover if he were found guilty of contributory negligence. Reasonable men could find, on the conflicting evidence, that he was contributorily negligent. Hence, there is no basis for the court's setting aside the verdict of no cause for action against him. R.R. 4:61-1(a).
2. The claims of infant plaintiffs Patrick and Brian Brennan for injuries.
The court made it clear in its charge to the jury that their father John's contributory negligence could not be imputed to or bar their recovery. It was clear from the evidence that any injuries either of them suffered were temporary and not of a permanent nature. Plaintiffs, in fact, did not claim otherwise at the trial. Reasonable men could find, on the evidence, that their injuries, if any, were so slight as not to be compensable, in which event a verdict denying them damages would be proper. Kovacs v. Everett, 37 N.J. Super. 133, 137 (App. Div. 1955), certification denied Kovach v. Kovacs, 20 N.J. 466 (1956); Watkins v. Myers, 12 N.J. 71 (1953); Ardis v. Reed, 86 N.J. Super. 323, 330 (App. Div. 1965), *359 affirmed 46 N.J. 1 (1965). Hence, there is no basis for the court's setting aside the verdict of no cause for action against them. R.R. 4:61-1(a). Indeed, were I the fact-finder, my finding in this regard might very well have been the same as that of the jury.
3. Infant plaintiff Sean Brennan's claim for injuries.
The court made it clear in its charge to the jury that the father's contributory negligence could not be imputed to or bar Sean's recovery. The court also made it clear in its charge that if the jury found Sean's injuries were permanent, it should take that fact into account in awarding him damages. The jury returned a verdict in Sean's favor for $1,100. The nature and permanency of Sean's injuries were sharply contested by the medical experts for both sides. The question was whether, as a proximate result of the accident, Sean became the victim of petit mal with some grand mal seizures and, if so, whether this condition would be permanent. Plaintiffs' physician, a neurosurgeon, testified that petit mal with grand mal seizures did result from the trauma Sean received in the accident and that the boy was not yet cured. Mr. and Mrs. Brennan's testimony as to Sean's condition after the accident could be found to support their physician's conclusions. Defendant's three physicians, including two neurologists, testified to the contrary. The two neurologists stated that neither petit mal nor grand mal could have resulted from any injuries received in the accident, and one of them attributed Sean's symptoms to a viral infection. The testimony of the father John that he had been absent from work for about eight weeks prior to the accident because of a virus may have had some influence on the jury's apparent belief in the testimony of defendant's physicians. Sean's school teacher testified that she had him in kindergarten after the accident, during the 1965-1966 school year; he behaved normally in class, his coordination was good, and she was never aware, either through observation or knowledge imparted by Sean's parents, that he had any health problem. The matter resolved *360 itself into one of determining the credibility of the witnesses for both sides. Based on the evidence, reasonable men could have found that Sean did not suffer petit mal or grand mal or any permanent injury as a proximate result of the accident, and that $1,100 was adequate to compensate him for the injuries he did in fact suffer. As a fact-finder I may have found differently, but I cannot state that the jury's verdict was not reasonably grounded in the evidence. Hence, it may not be set aside. R.R. 4:61-1(a); Nusser v. United Parcel Service, 3 N.J. Super. 64 (App. Div. 1949); Kovacs v. Everett, 37 N.J. Super. 133, 136 (App. Div. 1955), certification denied Kovach v. Kovacs, 20 N.J. 466 (1956); Andryishyn v. Ballinger, 61 N.J. Super. 386, 393-394 (App. Div. 1960); State by State Highway Com'r v. Speare, 86 N.J. Super. 565, 574 (App. Div. 1965), certification denied 45 N.J. 589 (1965).
4. Plaintiff Monica Brennan's claim for medical expenses for Patrick, Brian and Sean.
Since, as I have indicated in (2), above, the jury reasonably could have found the injuries of Patrick and Brian to be noncompensable, it also could have completely disbelieved the testimony as to the two boys' medical expenses. Accordingly, it could reasonably have refused a verdict of damages to their mother Monica with respect to the medical expenses of Patrick and Brian on this ground alone. But even if the jury had found that medical expenses were incurred as to all three children  Patrick, Brian and Sean  their mother Monica's claim therefor is barred by her husband John's contributory negligence. It is obvious, from the verdict in favor of Sean for his injuries and against his father John for his own injuries and car damage, that the jury found John guilty of contributory negligence. As I charged the jury, if they found John was contributorily negligent, there could be no recovery by Monica for such expenses, since John in fact paid them. The parent who actually pays or is under the legal obligation to pay medical expenses for the injured child may not recover therefor against the tortfeasor if he himself is guilty of contributory negligence, Maccia v. Tynes, 39 N.J. Super. 1 *361 (App. Div. 1956), although he may recover if his spouse and not he is guilty of such negligence. Savoia v. F.W. Woolworth Co., 88 N.J. Super. 153 (App. Div. 1965).
Here plaintiffs' own testimony was that John Brennan actually had paid the medical expenses. Indeed, he, as a father, was under a legal duty to pay such necessary expenses for his children, at least where, as here, he, his wife and children are living together as a family unit.[2]Turney v. Nooney, 21 N.J. Super. 522, 525 (App. Div. 1952). See Greenspan v. Slate, 12 N.J. 426 (1953); Friedrichsen v. Niemotka, 71 N.J. Super. 398, 402 (Law Div. 1962); Mullen v. Board of Chosen Freeholders of Essex County, 107 N.J.L. 301, 304 (E. & A. 1931); Corcione v. Zingerman, 111 N.J.L. 75, 80 (E. & A. 1933). Cf. Pangborn v. Central R.R. Co. of N.J., 32 N.J. Super. 289, 299 (App. Div. 1954).
A father has a duty to pay medical expenses for his children where he is living with his wife and children, even though his wife in fact retained the physician; for, in these circumstances, even since the Married Women's Act, she has the authority to pledge her husband's credit therefor. See Smedley v. Sweeten, 11 N.J. Super. 39, 42 (App. Div. 1950); Grieco v. Grieco, 38 N.J. Super. 593 (App. Div. 1956); Kelner v. Lee, 1 N.J. Super. 193 (App. Div. 1949).[3] And the father may recover medical expenses incurred with respect to his child's injuries caused by a tortfeasor even though his wife in fact paid the expenses with his money. *362 Sharkey v. Herman Bros., 3 N.J. Misc. 126, 129 (Sup. Ct. 1925), affirmed 102 N.J.L. 224 (E. & A. 1925). The parent whose funds are used to pay, or who is liable to pay, such expenses is the only one entitled to recover therefor. Savoia v. F.W. Woolworth Co., supra (88 N.J. Super., at p. 164); Pangborn v. Central R.R. Co., supra (32 N.J. Super., at pp. 292, 299).
Accordingly, even though, as claimed, plaintiff mother actually obtained the medical aid for the children or paid therefor from her husband's funds, the legal status of the claim for medical expenses is the same as if the father were the claimant. Since he in fact paid the expenses and was legally obligated to pay them, the claim is his, not his wife's. If he would be barred from recovery thereon, so would she. Such bar to recovery may not be avoided merely by the device of having her sue as plaintiff on the claim. Cf. Heyman v. Gordon, 40 N.J. 52, 54 (1963). Thus, even if it be assumed that she has standing to sue and recover on the claim, in determining whether recovery may be had thereon it is to be considered as if he were the claimant. Since the jury must have found that he was guilty of contributory negligence, he could not recover for the children's medical expenses (Maccia v. Tynes, supra); his wife, therefore, is likewise foreclosed from such recovery. Compare Allan B. Du Mont Laboratories, Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 298 (1959); Standard Accident Ins. Co. v. Pellechia, 15 N.J. 162, 172 (1954).[4]
*363 5. Plaintiff Monica Brennan's claim for loss of services and loss of companionship and society of Patrick, Brian and Sean.
Since, as stated in (2) above, the jury reasonably could have found the injuries of Patrick and Brian to be noncompensable, it reasonably could have found that their mother suffered no loss of their services, companionship or society. Accordingly, it reasonably could have refused a verdict of damages to Monica Brennan with respect to such loss as to Patrick and Brian on this ground alone.
Moreover, in the complaint and at the trial plaintiff mother sought recovery for the loss of services, companionship and society of all three children up to the time of trial only, and not for any future loss thereof. At the time of the accident, three years before the trial, Patrick was four, Brian was three, and Sean was two years of age. There was no proof whatsoever at the trial of any actual loss of services to either parent up to the time of trial with respect to any of these three young children. There was not even evidence of loss of the assistance of any of them in the everyday affairs of the household. Proof of actual loss of services is essential in order for a parent to recover compensation for loss of past services. Pangborn v. Central R.R. Co. of N.J., 32 N.J. Super. 289, 299 (App. Div. 1954). See Marcinko v. Sauer, 8 N.J. Misc. 127, 149 A. 69 (Sup. Ct. 1930); Schlenker v. Sussman, 5 N.J. Misc. 1046, 139 A. 408 (Sup. Ct. 1927); Murray v. Cohen, 4 N.J. Misc. 139 (Sup. Ct. 1926).[5] Indeed, because of the absolute lack of such proof, I deliberately omitted to *364 charge the jury that it could find damages to Monica Brennan for such loss of the childrens' services. Hence, for failure of proof alone, she is not entitled to recover for loss of past services of any of the children.
Plaintiff Monica Brennan, however, argues that, certainly as to Sean, in favor of whom the jury returned a damage verdict for his injuries, she is entitled to recover for loss of his past services even without particularized proof thereof. She relies on the cases dealing with a parent's recovery for loss of future services or earnings of a child. Mathias v. Luke, 37 N.J. Super. 241 (App. Div. 1955); Simmel v. N.J. Coop. Co., 28 N.J. 1 (1958). However, the principles established in those cases do not apply to recovery for loss of past services or earnings. Merely because the jury is permitted some area of speculation with respect to future probabilities of such loss does not warrant allowing it to speculate concerning a matter such as loss of past services, which is certainly capable of some proof.
Moreover, even if the foregoing principles do apply to loss of past services or earnings, or even if the issue of loss of future services or earnings of Sean were involved herein, they would not be of assistance to plaintiff. For the rule is that "in the absence of proof showing the nature of the services lost or the extent of that loss [or] * * * that there probably would be some loss" thereof, damages therefor may be recovered only where the child has suffered a permanent injury and reasonable men could find that probably there will be some resultant loss of services by reason thereof. Simmel v. N.J. Coop. Co., supra; Mathias v. Luke, supra.[6]
*365 In the instant case the verdict in favor of Sean of only $1,100 for his injuries indicates that the jury did not consider his injuries of a serious or permanent nature. In view of the sharp conflict in the medical and other proofs, as I have already held (see (3) above), such a finding is one which reasonable men might justifiably make. Reasonable men might likewise have determined from the evidence that there were no services, either past or future, lost by reason of Sean's injuries. Hence, even if it be assumed that I should have charged the jury that it might consider awarding damages for the loss of Sean's past or future services, in view of the jury's obvious determination that his injuries were neither serious nor permanent, plaintiff has not been harmed or prejudiced, or denied substantial justice by the failure so to charge. R.R. 4:63-1; 4:61-1(a).[7]
I did charge the jury, however, that it might find damages in favor of Monica Brennan for the past loss of companionship and society of Patrick and Brian (in view of the plainly temporary nature of their claimed injuries) and for the past and reasonably probable future loss of Sean's companionship and society, if they found his injuries to be permanent in nature.[8]
*366 As I have already stated, the jury could reasonably have determined that the injuries to Patrick and Brian were noncompensable and that, therefore, their mother suffered no loss of their companionship or society by reason thereof. Hence, the verdict against Monica for such loss with respect to Patrick and Brian is justified by the proofs, and it may not be set aside. R.R. 4:61-1(a).
Similarly, for the reasons given above with respect to the alleged loss of past or future services of Sean, the jury's verdict of no cause for action against Monica in connection with her claimed loss of Sean's past or future companionship and society is one which reasonable men might make, based on the proofs as to the nature of his injuries and the amount of the verdict for such injuries. Accordingly, that verdict may not be set aside. R.R. 4:61-1(a).
The foregoing discussion assumes that there exists a cause of action in this State in favor of a parent or parents for damages for loss of the companionship and society of a child injured as a consequence of a tortfeasor's negligence. I so assumed when I charged the jury that it was permitted to return a verdict for such damages. However, I am now convinced that no such cause of action exists, and that in a negligence action the parents' recovery is limited to damages for loss of the child's past or future services and earnings and for past and future medical and related expenses in connection with the cure or alleviation of the child's injuries. Since my charge concerning this claim erred in favor of plaintiff, and the jury returned a verdict on the claim in favor of defendant, neither party has cause to complain with respect thereto.
No New Jersey cases have been found which involve or allow a claim by parents for loss of a child's companionship and society resulting from a negligent tort. It is true that the law has been expanding with respect to allowing damages for negligent interference with family relationships. See Ekalo v. Constructive Service Corp. of America, 46 N.J. 82 (1965), allowing a cause of action by wife for loss of consortium of her injured husband; Magierowski v. Buckley, 39 N.J. *367 Super. 536, 540-542 (App. Div. 1956); Prosser, Law of Torts (3d ed. 1964), § 119, p. 912.
But Ekalo makes it fairly clear that no expansion of the right to recover for negligent interference with the parent-child relationship was there intended, for the Supreme Court there said:
"* * * defendants refer to the fear that recognition of the wife's claim [to recover for loss of her husband's consortium] may necessitate the allowance of recovery to other members of the family and inordinately expand a defendant's liability for losses resulting from his negligence * * *. The law has always been most solicitous of the husband and wife relationship, perhaps more so than the parent and child relationship. * * * In any event, policy rather than logic is the determinative factor and, while persuasive arguments may be mustered in favor of the child's claim [for loss of his parents' society] (Prosser, * * * at page 919) the reciprocal recognition of the wife's claim may readily be rested on its own footing of equality and justice without any compulsion of going further." (46 N.J., at p. 92, emphasis supplied)
The law has not always been as ready to protect the relation of parent and child as it has been that of husband and wife, except in the area of such intentional torts as seduction of a child. In seduction cases the parent has been permitted to recover not only the value of the services lost but damages for medical and other expenses for the care of the child, for loss of her society and comfort, for the parent's wounded feelings, and for the dishonor brought to himself and his family  with punitive damages imposed. Magierowski v. Buckley, supra, at pp. 541, 545; Landriani v. Lake Mohawk Country Club, 26 N.J. Super. 157, 162 (App. Div. 1953); Magee v. Holland, 27 N.J.L. 86, 97 (Sup. Ct. 1858). However, the recovery by a parent of items of damage other than medical expenses and loss of earnings or services of a child has not been allowed where the child's injuries are occasioned by the negligence of another. As Magee, supra, stated, in distinguishing the rule permitting damages for injury to a parent's feelings in seduction cases, "It was very different from a case of injury arising from a mere act of negligence" (at p. 97). *368 Hence, one cannot argue from the seduction cases that the kind of family relational damages there allowed  e.g., injury to family reputation and feelings or loss of the child's society  are or should be likewise permitted in the ordinary negligence action. See Landriani v. Lake Mohawk Country Club, supra, at p. 162.
New York, Pennsylvania and Alabama do not allow a parent to recover for the loss of his child's society and companionship in a negligence action. Gilbert v. Stanton Brewery, Inc., 295 N.Y. 270, 67 N.E.2d 155 (N.Y. Ct. App. 1946); Foti v. Quittel, 19 A.D.2d 635, 241 N.Y.S.2d 15 (App. Div. 1963); Quinn v. City of Pittsburgh, 90 A. 353 (Pa. Sup. Ct. 1914); Lobianco v. Valley Forge Military Academy, 224 F. Supp. 395 (E.D. Pa. 1963); Smith v. Richardson, 277 Ala. 389, 171 So.2d 96 (Ala. Sup. Ct. 1965).
Although Prosser, op. cit., § 119, p. 919, lumps together the loss of society of a wife or child as an element of damage, the authority he cites does not bear out the claimed rule insofar as it relates to an injured child in an ordinary negligence action. The one case relied on by Prosser, Anderson v. Great Northern Ry. Co., 15 Idaho 513, 99 P. 91 (Idaho Sup. Ct. 1908), involved an action under Idaho's Wrongful Death Act, which, unlike that of New Jersey (which permits recovery only of pecuniary loss, McStay v. Przychocki, 7 N.J. 456, 460 (1951)), authorizes the recovery of such damages "as under all the circumstances of the case may be just." The court approved the award of damages for loss to the parents of the decedent child's companionship. To the same effect, Gardner v. Hobbs, 69 Idaho 288, 206 P.2d 539, 14 A.L.R.2d 478 (Idaho Sup. Ct. 1949). California has a statute (Code of Civil Procedure, §§ 376 and 377) containing language similar to that of the Idaho statute but covering cases involving both wrongful death and injuries to a child. In wrongful death cases California, like Idaho,[9] allows damages for loss of *369 a child's companionship, Parsons v. Easton, 184 Cal. 764, 195 P. 419 (Cal. Sup. Ct. 1921); but it apparently does not allow such recovery in an ordinary non-death negligence action. See Stone v. Yellow Cab Co. of Cal., 227 P.2d 131 (Cal. D. Ct. App. 1950).
I have concluded, therefore, that a parent in a negligence action may not recover damages for loss of the society and companionship of an injured child, for the following reasons: (a) there is no authority in this State for allowing such recovery; (b) those New Jersey cases which authorize a parent to recover damages beyond medical expenses and loss of earnings and services involve the tort of seduction and expressly distinguish between seduction actions (where they are allowed) and negligence actions (where they are not allowed); (c) the Supreme Court in Ekalo, supra, predicated its holding permitting a wife in a negligence action to recover for loss of her husband's consortium solely on the ground that this would place her on an equal footing with her husband (who already had a reciprocal right as to loss of her consortium) and expressly stated that this decision did not compel it to go further by allowing a similar recovery in the parent-child relationship, and (d) until an appellate court rules otherwise, in view of the foregoing, it appears unwise, as a matter of policy, for a trial court to expand the area of recoverable damages in a negligence action to include recovery by a parent for loss of a child's society and companionship, particularly since New York, Pennsylvania and Alabama have ruled to the contrary in well-reasoned opinions.
Since plaintiff Monica Brennan had no legal right to recover damages for loss of her children's society and companionship, the erroneous jury charge that such a right existed favored, rather than prejudiced, her. Similarly, even if I erred in the further charge that such claim would be barred if her husband were found guilty of contributory negligence, such error in no way could have affected her adversely since, in any event, irrespective of such contributory negligence, legally she had no such claim.
*370 Assuming, however, that plaintiff Monica Brennan's claim for such loss was a legally proper matter for the jury to consider, was error committed when I charged the following?:[10]
"* * * if you find that defendants have sustained the burden of proving * * * that John Brennan was guilty of contributory negligence * * *, [his contributory negligence] would be imputed to his wife because * * * both he and his wife are entitled to [the] companionship and society of the children. To permit Monica to recover these damages would, in effect, permit John Brennan to profit by his own wrong. * * *"
Plaintiff contends that the charge contravenes the rule established in Savoia v. F.W. Woolworth Co., supra, 88 N.J. Super. 153 (App. Div. 1965). In that case both parents sued for "rather severe injuries" of their child and the medical expenses and loss of services they sustained (at p. 158). The jury returned a verdict of $13,500 for the child and $1,000 for her father only, per quod. On motion for a new trial the court reduced the verdict for the father to $725.50, his actual out-of-pocket medical expenses (at p. 157). Thus, the question of damages for loss of companionship and society of the child (or for that matter, loss of the child's services) was not involved on the appeal. The Appellate Division held that the trial court properly refused to charge the jury that the contributory negligence of the mother would bar recovery by the father for the medical expenses which he paid. "There was no proof of any expenditure made by the wife and the jury was instructed that it could not render any verdict in her favor" (at p. 164). Thus, the actual holding of Savoia is that the contributory negligence of a wife may not be imputed to her husband so as to bar recovery by him of medical expenses actually incurred by him for the injured child.
*371 However, the Appellate Division, in arriving at its decision and by way of dictum, did seem to go further than its actual holding by (1) indicating that, since the Married Women's Act, "the wife has been regarded as a separate individual whose negligence is no more to be charged against her husband than in the case of any other person" (at p. 165); (2) relying on out-of-state cases which seem to apply the rule precluding such imputed negligence not only to medical expenses but also to other elements of the parent's per quod recovery with respect to an injured child, and (3) refusing to follow other contrary out-of-state cases on the ground that they are based either on the common law rule that the husband and wife are one, or on the rules, inapplicable in New Jersey, that the husband and wife have a community of interest in the proceeds of a recovery by either, or that the obligation of a spouse to care for a child is derived from a delegation of authority by the other spouse and, therefore, one is the agent of the other or responsible for that agent's negligence.
Because the elements other than medical expenses were not involved, the court did not consider the effect of N.J.S.A. 9:1-1 relating to the parents' right to a child's services and earnings. This statute provides that both parents are "equally entitled to its services and earnings" unless one of them is dead, has abandoned the child or been deprived of custody of the child by a court, in which event "the other is entitled to such services"; and further provides for a joint action by the parents for loss of wages or services against a tortfeasor who injures the child unless one parent is dead, has abandoned the child, been deprived of its custody by a court, or refuses to sue, in which event "the other may sue alone." Thus, where the parents live together with the child they should sue jointly for loss of its wages or services. See Magierowski v. Buckley, 39 N.J. Super. 534, 552 (App. Div. 1956). Nor did the court consider whether a rule similar to that established by this statute should be applied to loss of *372 companionship and society of a child, assuming a cause of action therefor does exist.[11]
I am of the opinion that, notwithstanding the provisions of the Married Women's Act making the wife a separate legal entity with respect to her torts, the effect of N.J.S.A. 9:1-1 is to make her and her husband a unit, while they are living together with their child, with respect to being entitled to the services or earnings of the child and to suing and recovering for the loss thereof against a tortfeasor. The Legislature, in enacting N.J.S.A. 9:1-1, considered that such services and earnings belonged jointly and equally to the parents under such circumstances. In effect, then, with respect to the loss of such services and earnings where the parents and child live together, the statute has decreed that "the husband and wife have a community of interest in the proceeds of a recovery by either." Savoia, supra, at p. 167. Accordingly, even under the dictum of Savoia, the contributory negligence of either parent would bar recovery of such loss by the other or by both parents.
If the parents are to be treated in this fashion as a unit with respect to the loss of their child's services and earnings, then certainly the same principle should be applied by the court  even absent statutory authority  with respect to the loss of their child's companionship and society, an even more intangible and indivisible element of the parent-child relationship. It would appear to be most unrealistic to endeavor to divide that kind of loss and to treat each parent as a separate entity for the purpose of recovering damages for such loss. Hence, if a cause of action does exist in favor of parents for loss of a child's society and companionship, where they are living together with the child, they are entitled to such society and companionship equally as a unit and must sue jointly for the deprivation thereof, and the contributory *373 negligence of either parent is a bar to recovery for loss thereof by the other or by both parents.[12]
Accordingly, I hold to be proper the charge I gave that John Brennan's contributory negligence bars Monica Brennan's recovery for loss of the children's companionship and society because "both he and his wife are entitled to [the] companionship and society of the children."[13] I am of the opinion that Savoia does not require or indicate a different result in this case.[14]
In any event, even if the full sweep of Savoia makes the court's charge erroneous,[15] plaintiff Monica Brennan is in no way prejudiced thereby since, as I have already held, she had *374 no cause of action for loss of the children's society and companionship or, under the proofs, the loss of their services or earnings.
The motion for new trial is, accordingly, denied.
NOTES
[1] The action against Stockhammer was dismissed by the court at the end of the case before its submission to the jury.
[2] R.S. 9:2-4, providing that both parents are "equally charged with" the care, nurture and welfare of the children, relates only to the situation where custody of the children pending a controversy between the parents or their final possession is in issue. It thus does not change the rule placing the duty of support on the father where there is no such issue or controversy and the parents live together.
[3] Plaintiff's reliance on the Married Women's Act provision that a wife is liable for her own debts contracted by her in her own name (R.S. 37:2-10) is misplaced, for here she did not contract the medical expenses in her own name; and in any event, as shown by the cited cases, the separate status of a married woman created by the act does not affect the rule that she may pledge her husband's credit for such necessaries as the children's medical expenses while they are living together as a family unit.
[4] The issue here is not, as plaintiffs maintain, whether one spouse's contributory negligence may be imputed to the other (see Savoia v. F.W. Woolworth Co., 88 N.J. Super. 153 (App. Div. 1965)); rather, it is whether a spouse may avoid the defense of his own contributory negligence to a claim which is his by the device of having the other spouse sue on such claim. Plaintiffs are also in error in relying on cases holding that medical expenses paid from collateral sources may still be recovered from the tortfeasor (Skillen v. Eagle Motor Co., 107 N.J.L. 211 (Sup. Ct. 1931); Long v. Landy, 35 N.J. 44 (1961)). The father, John Brennan, who is under a direct legal duty to pay such expenses and whose credit therefore may be pledged by his wife's certainly cannot be considered a collateral source as far as his wife's claim for such expenses is concerned.
[5] See also Callaghan v. Lake Hopatcong Ice Co., 69 N.J.L. 100 (Sup. Ct. 1903), where the court overruled a demurrer to a declaration alleging that the father was deprived of his son's services for some period by reason of defendant's negligence. It was in that context  that is, accepting as true, in ruling on the demurrer, the allegation that the father was in fact deprived of his son's services (Orrok v. Parmigiani, 32 N.J. Super. 70, 74 (App. Div. 1954))  that the court stated that the "right of the father to the son's services is to be presumed from the minority of the latter, unless emancipation appears."
[6] To be distinguished are cases of torts, such as seduction of a minor child, which historically required loss of services as the foundation of the cause of action itself, rather than as a factor in the measurement of damages to the parent. In such actions, loss of services is often presumed, where the child is living at home, from the parent-child relationship, so that the action may be maintained; and so such loss need not be proved. Moreover, in such actions the parent may recover damages for mental distress and family reputation. On the other hand, in negligence actions, loss of services is solely an element of damage to the parent and, as indicated above, must be proved, and the parent may not recover for injury to his feelings or mental distress. See Magierowski v. Buckley, 39 N.J. Super. 534, 544 (App. Div. 1956); Landriani v. Lake Mohawk Country Club, 26 N.J. Super. 157, 162 (App. Div. 1953); Magee v. Holland, 27 N.J.L. 86 (Sup. Ct. 1858). See also Callaghan v. Lake Hopatcong Ice Co., 69 N.J.L. 100 (Sup. Ct. 1903), discussed supra, n. 4.
[7] My trial notes indicate that at the time I denied defendants' motion for judgment at the end of plaintiffs' case, plaintiffs' attorney agreed that the court properly could omit to charge with respect to loss of the children's services under the proofs, and could limit its charge to permit recovery for loss only of their companionship and society. If this is so, then, of course, plaintiff has waived any right now to make a claim for loss of services. R.R. 4:52-1; Ardis v. Reed, supra, (86 N.J. Super., at p. 333).
[8] As hereinafter shown, I erred in favor of plaintiff by permitting the jury to consider damages for loss of companionship and society of the children. In addition, as indicated later herein, I also charged that Monica's claim therefor would be barred by a finding that her husband John was guilty of contributory negligence.
[9] Unlike New Jersey's Death Act. See McStay v. Przychocki, 9 N.J. Super. 365, 370 (Cty. Ct. 1950), affirmed 10 N.J. Super. 455 (App. Div. 1950), affirmed 7 N.J. 456 (1951).
[10] The charge related only to the claimed loss of society and companionship, since I had ruled  with consent of counsel  that loss of services could not be recovered under the proofs. Accordingly, the legal propriety of the charge with respect to loss of services and earnings is not here involved, although I believe that logically the same rule should apply thereto.
[11] Cf. Pangborn v. Central R.R. Co. of N.J., supra, (32 N.J. Super., at p. 299), holding that the statute applied only to recovery for loss of services and earnings and not to recovery of medical expenses.
[12] A contrary rule would require the court to charge the jury that it should award one-half of the damages found for such loss to the nonnegligent parent and nothing to the negligent parent. This is apparently what is suggested in Phillips v. Denver City Tramway Co., 53 Colo. 458, 128 P. 460 (Colo. Sup. Ct. 1912), cited in Savoia.
[13] I should further have required that both parents, instead of Monica alone, be joint plaintiffs with respect to this claim for damages. The fact that the father was not joined as plaintiff for this claim does not hide the fact that he is a "real party in interest" therein. See Heyman v. Gordon, 40 N.J. 52, 54 (1963).
[14] The fact that in wrongful death actions the contributory negligence of the beneficiary does not bar recovery by him (Savoia, supra, at p. 166), would not militate against the rule adopted herein with respect to a common law negligence action, for the courts have interpreted that statute as creating a new cause of action without many of the "highly restrictive" bars to relief which the common law developed. See Heyman v. Gordon, supra (40 N.J., at p. 59, dissenting opinion of Justice Jacobs).

The result in the instant case might be different if both parents and the child were not living together as a family unit. In that event, the reason for the rule no longer existing, the rule might not be applicable and might not bar such recovery by the parent having custody. Cf. Long v. Landy, 35 N.J. 44 (1961); Heyman v. Gordon, supra (40 N.J., at p. 54).
[15] Compare the language of Illingsworth v. Madden, 135 Me. 159, 192 A. 273, 110 A.L.R. 1090 (Maine Sup. Jud. Ct.), quoted at length in Savoia, supra, at p. 166.